UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

EMPLOYERS MUTUAL CASUALTY COMPANY,

Plaintiff,

Civil Action No. 5:23-271-KKC

v.

CHEYEENE R. CLIFFORD,
JESSICA HARPER, as Administrator of the Estate of Nathanial Clay Welch,
CLIFFORD'S CONSTRUCTION, LLC,
DYLAN SAUCEDO,
EMILY EARLYWINE, and
ESTATE OF GAGE GAUNCE

Defendants.

**OPINION AND ORDER**

*** *** *** ***

This matter is before the Court on the Motion to Dismiss (DE 11) filed by three defendants in this action (hereinafter, the "Defendants").

In their motion, these moving Defendants (Dylan Saucedo, Emily Earlywine, and the Estate of Nathanial Clay Welch) ask the Court to exercise its discretion to decline jurisdiction over this declaratory judgment action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and dismiss the complaint. For the following reasons, the Court will grant the Defendants' motion.

## I. BACKGROUND

In this action, Employers Mutual Casualty Company ("EMC") names as defendants certain individuals involved in a wreck in Ewing, Kentucky. One of those individuals is Cheyeene R. Clifford, who was a member of Cliffords Construction, LLC. EMC asserts that it issued multiple automobile insurance policies to Cliffords Construction that were effective through December 30,

2023. EMC alleges that, beginning in January 2023, Cliffords Construction failed to pay its premiums for the policies. Thus, after sending termination notices, EMC canceled the policies on March 30, 2023 for nonpayment of the premium.

A little over two months later, on June 3, 3023, Clifford was allegedly driving a truck with several passengers in it when he wrecked. Passengers Nathanial Clay Welch and Gage Gaunce died, and passengers Dylan Saucedo and Emily Earlywine were seriously injured.

On July 27, 2023, Saucedo, Earlywine, and the administrator of Welch's estate filed a complaint in state court asserting claims against Clifford and an establishment called the Gyp Joint. The state court plaintiffs alleged that Clifford wrecked after consuming alcoholic beverages at the Gyp Joint, and they asserted negligence claims against Clifford and the Gyp Joint. (DE 12-1, State Court Complaint.)

In this federal action, EMC seeks a declaration that it properly canceled the policies and, thus, has no obligation to defend or indemnify Clifford in the underlying state court action. It also seeks a declaration that the policies, even if effective, did not cover the injuries incurred in the wreck. EMC names as defendants Clifford, Cliffords Construction, LLC, the administrator of Welch's estate, Saucedo, Earlywine, and the estate of Gage Gaunce.

Welch's estate administrator, Saucedo, and Earlywine move to dismiss EMC's complaint, arguing that this court should decline to exercise jurisdiction over this declaratory judgment action pursuant to the factors outlined in *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984).

## II. ANALYSIS

The Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party

seeking such declaration." 28 U.S.C. § 2201(a). "As the use of the permissive 'may' suggests, 'a district court's ability to hear an action under the Declaratory Judgment Act does not compel it to do so.'" *Frankenmuth Mut. Ins. Co. v. Balis Campbell*, 510 F. Supp. 3d 482, 488 (E.D. Ky. 2020) (quoting *Grange Mut. Ins. Co. v. Safeco Ins. Co. of Am*., 565 F. Supp. 2d 779, 785 (E.D. Ky. 2008)). The Act thus gives courts "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co*., 515 U.S. 277, 286 (1995).

This discretion must be exercised cautiously, and "[g]enerally, courts should only [accept jurisdiction] when doing so would advance the interests of justice or preserve resources of the parties." *Owners Ins. Co. v. Scates Builders, LLC*, 2022 WL 1310801 at *3 (E.D. Ky. May 2, 2022) (citing *Grange*, 565 F. Supp.2d at 785). As this Court has previously explained: "We are, after all, courts of limited jurisdiction. And, if our decision to keep a matter does nothing more than cause the parties to engage in litigation on two fronts, we are neither furthering the interests of justice nor preserving parties' resources." *Grange*, 565 F. Supp. 2d at 785. The Sixth Circuit has similarly "cautioned district courts not to jump into the middle of ongoing litigation," noting that "declaratory judgment actions seeking an advance opinion of indemnity issues are seldom helpful in resolving an ongoing action in another court." *Id*. (quoting *Bituminous Cas. Corp. v. J & L Lumber Co*., 373 F.3d 807, 812 (6th Cir. 2004)) (quotations omitted). Nevertheless, "no per se rule exists against exercising jurisdiction" under the Declaratory Judgment Act. *Id*. (citing *Bituminous*, 373 F.3 at 812–13).

A district court's discretion to exercise jurisdiction is substantial, but not unguided. *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014). In the Sixth Circuit, the five factors identified in *Grand Trunk W. R.R. Co. v. Consol. Rail Corp*., 746 F.2d 323, 326 (6th Cir. 1984) frame the inquiry. These non-exclusive factors, often called the *Grand Trunk* factors, are intended

to be "helpful guidelines" for district courts to consider when determining whether to accept or decline jurisdiction under the Declaratory Judgment Act. *Hoey*, 773 F.3d at 759. The factors direct court to consider:

> (1) whether the declaratory action would settle the controversy;
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata";
> (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and
> (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk*, 746 F.2d at 326.

Three important policy considerations underpin the *Grand Trunk* factors: efficiency, fairness, and federalism. *Hoey*, 773 f.3d at 759 (citing *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 390–91 (5th Cir. 2003)). On balance, this Court finds that the *Grand Trunk* factors weigh against exercising jurisdiction in this case, thus supporting a dismissal without prejudice.

As to the first two factors, the Court cannot find that this action would settle the controversy between the parties to this action or that it would serve a useful purpose in clarifying the legal relations in issue. This is because the state court has also been presented with the question of whether EMC properly canceled Cliffords Construction, LLC's insurance policy and whether the policy covers the damages incurred in the wreck. While the initial state court complaint did not ask the state court to determine whether Cliffords was covered under an EMC policy, in a surreply tendered by the Defendants in support of their motion to dismiss, the Defendants explain that the Nicholas Circuit Court granted a motion to amend their complaint to add EMC as a defendant. (DE 18-4, State Court order; DE 18-5, Amended State Court Complaint.)

In the amended state court complaint, the state court plaintiffs assert that they sought PIP coverage from EMC and that Clifford sought indemnity from EMC. The state court plaintiffs assert that the truck driven by Clifford was insured by an EMC commercial policy. They assert that Clifford paid the premium due by "auto-pay," and that EMC improperly terminated the policy. The state court plaintiffs assert claims against EMC for failing to pay them PIP benefits in violation of a state statute (KRS 304.39). They request a declaration from the state court that EMC owes coverage for any award to any plaintiff pursuant to the policy issued to Cliffords. Thus, in determining the duty to defend, the state court will be asked to decide the same factual and legal issue presented to this Court: whether Clifford paid the required premium and whether EMC properly canceled the policy.

Because the state court has also been presented with the coverage question, if this Court retained jurisdiction in this action and resolved the coverage issue, it would not necessarily settle the controversy. The issue would remain as to the effect of any contrary state court judgment. If, on the other hand, this Court and the state court should issue consistent decisions on the coverage issue, then this Court's judgment would be unnecessary. *Bituminous*, 373 F.3d at 813–14 ("The declaratory judgment action in federal court could serve no useful purpose. The federal court could either reach the same conclusion as the state court, in which case the declaration would have been unnecessary and the federal litigation a waste of judicial resources, or the federal court could disagree with the state court, resulting in inconsistent judgments.")

As to the third factor, defendants do not argue that EMC filed this declaratory judgment action merely for the purpose of "procedural fencing" or to provide an arena for res judicata. Moreover, "[t]he third factor usually does not weigh heavily in the analysis." *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 399 (6th Cir. 2019). Courts "generally do not make a

finding of procedural fencing if the declaratory-judgment plaintiff filed *after* the commencement of litigation in state court." *Cole's Place*, 936 F.3d at 399 (citation omitted). The Court therefore presumes there was no bad faith or improper motive on EMC's part. This factor weighs slightly in favor of accepting jurisdiction.

The next two factors, however, weigh in favor of declining jurisdiction. First, use of a federal declaratory action in this instance would increase friction between our federal and state courts and improperly encroach upon state jurisdiction. Insurance contract interpretation presents questions of state law. *Bituminous*, 373 F.3d at 815 (6th Cir. 2004). This case was brought pursuant to the federal courts' diversity jurisdiction and neither federal common law nor federal statutory law applies to the substantive issues of the case. This counsels against federal jurisdiction over this action. *Id*. at 816. Moreover, the risk of inconsistent state and federal judgments means that "[a]ny resolution that could be achieved by the declaratory judgment would come at the cost of increasing the friction between state and federal courts." *Id*. at 817.

Moreover, there is an alternative remedy that is better and more effective than this federal declaratory judgment action. That remedy is a declaratory judgment issued by the state court that is presiding over the civil action involving the underlying wreck, which includes the same parties as this federal action. The plaintiffs in the state court action have requested a declaration on coverage from the state court. "Given that the issues presented involve questions of state law only, the state court is also in a superior position to resolve the case." *Id*. at 816; *see also Grange*, 565 F. Supp. 2d at 790 ("Since this is an insurance action, the state court is better situated to decide the issue, weighing against jurisdiction."). "[E]ven in cases where state law has not been difficult to apply, [the Sixth Circuit] has usually found that the interpretation of insurance contracts is closely entwined with state public policy." *Cole's Place*, 936 F.3d at 401. "While federal courts are not

unfit to consider insurance questions, . . . the presence of this exclusively state issue causes this sub-factor to counsel against exercising jurisdiction." *Grange*, 565 F. Supp. 2d at 790.

A declaratory action in Kentucky state court also has the advantage of efficiency, allowing the coverage issue and the underlying state court action to be resolved by the same judge. That would allow the parties to litigate all the issues on one front, rather than two.

Balancing all of these factors, the Court finds it appropriate to decline jurisdiction over this declaratory judgment action.

## III. CONCLUSION

Accordingly, the Court hereby ORDERS as follows:

1) Defendants' Motion to Dismiss (DE 11) is GRANTED;
2) Defendants' Motion for Leave to file a Surreply (DE 18) is GRANTED, and the Clerk of the Court is DIRECTED to file the tendered surreply into the record (DE 18-1 with DE 18-2 through DE 18-5 as exhibits);
3) The Court declines to exercise jurisdiction over this matter under the Declaratory Judgment Act, 28 U.S.C. § 2201;
4) this matter is DISMISSED WITHOUT PREJUDICE and STRICKEN from the Court's active docket; and
5) Plaintiff's motion to amend its complaint (DE 16) is DENIED as moot.

This 15th day of May, 2024.



KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY